In re the MARRIAGE OF Martha Claire MONTGOMERY and William Scott Montgomery,

Upon the Petition of Martha Claire Montgomery n/k/a Martha Claire Lynch, Appellant,

And Concerning William Scott Montgomery, Appellee.

No. 93–1231.

Court of Appeals of Iowa.

June 28, 1994.

Michael J. Winter, Council Bluffs, for appellant.

Deborah L. Petersen of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellee.

Heard by HAYDEN, P.J., and HABHAB and CADY, JJ., but decided en banc.

HAYDEN, Presiding Judge.

Martha (Marty) and William (Scott) Montgomery were married on May 30, 1981. Jesse Scott Montgomery was born to the couple on March 24, 1985. On October 16, 1986, Marty and Scott were granted a dissolution of their marriage. The primary area of contention in the dissolution proceeding was physical custody of Jesse. The district court found each parent was capable and loving but Scott "has a very close and trusting relationship with the minor child and has unusually high qualifications as a parent for Jesse." Marty was awarded three weekends a month, three weekday afternoons per week, alternating holidays and birthdays, and three months of summer visitation. Marty was not ordered to pay child support. Scott was ordered to pay child support of $325 per

month during the three-month summer visitation period.

On July 22, 1991, the district court modified the dissolution decree. The district court found Scott's income had declined and Marty's income had increased since the decree. It also found both parties had remarried and increased the number of their dependents. The district court eliminated any support requirement between the parties and ordered Scott to maintain and pay for medical and hospitalization insurance for Jesse.

In February 1993 Scott informed Marty he intended to move to Wyoming for a better paying job. Marty filed this application urging the following reasons justified modifying the dissolution decree: Marty and Jesse had become very involved with the Church of Christ; most of Jesse's relatives live in the Council Bluffs area; and Scott's move to Wyoming indicated Marty could now provide a more stable environment. Scott answered and filed a cross-petition alleging the visitation and child support provisions should be modified.

Marty presented several witnesses in support of her application. At the close of Marty's case-in-chief, the district court dismissed the application. It found Scott's move to Wyoming and Marty's involvement in her religion were not sufficient to justify a modification. Additionally, the court found, although Marty is a loving and caring parent, she had failed to show she is a better parent than Scott.

On Scott's cross-petition, the court concluded the move was sufficient to justify a modification of the visitation provisions of the decree. It also ordered Marty to pay one-half the visitation transportation costs. Finally, the court found Marty had voluntarily decreased her income and ordered her to pay child support of $144.75 per month based on her earning capacity.

Marty appeals. She argues she can better provide for Jesse's religious upbringing. She also argues the district court erred in determining her earning capacity and is punishing her for electing to stay home to raise her youngest son. She argues Scott has always "been the parent with the primary income and he should continue to bear the lion's costs of transporting the child for purposes of visitation."

■ Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

■ Marty first contends the trial court erred in refusing to modify custody because she believes a substantial change in circumstances has occurred.

To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983) (citing *In re Marriage of Mikelson,* 299 N.W.2d 670, 671 (Iowa 1980)).

Marty contends there has been a substantial change in circumstances because Scott moved Jesse to Wyoming. She additionally believes her involvement with a church is a significant change because Jesse attended the church quite often and he now will not be attending church because Scott does not attend. She also contends Scott smokes marijuana and cigarettes and drinks alcohol.

The Iowa courts have addressed the issue of a custodial parent moving the child out of state on many occasions. In *In re Marriage of Frederici*, 338 N.W.2d 156 (Iowa 1983), the court held the burden is on the party resisting removal of children to another state to demonstrate the move will detrimentally affect the child's best interests. The court further held the fact a move is traumatic for children is not a sufficient reason to justify shifting physical care to the nonmoving joint custodian. *Id.* at 164. Jesse has lived with Scott since birth and with only Scott since he was eighteen months old. He is comfortable with his family and appears from the record to be thriving.

Marty cites to the case of *In re Marriage of Green*, 417 N.W.2d 252 (Iowa App.1987), to support her argument custody should be changed due to Scott's move. However, the Green case is distinguishable. In *Green*, the parties had joint custody and alternate physical care. The parties initially lived in fairly close proximity, but in different school districts. *Green*, 417 N.W.2d at 253. Mrs. Green moved on a number of occasions and often had difficulty determining whether she would take the children. *Id.* Mr. Green filed for modification and was granted sole physical custody. *Id.* The court affirmed the trial court finding the children needed a more stable environment. Since the mother had been indecisive with regard to her custody plans and could not decide whether to take the children, the court found the father to be the more appropriate custodian. *Id.* The decision was not based upon the fact the mother had moved.

Marty also contends custody should be changed because Jesse will not be receiving the same religious instruction he received while the two resided in the same community. Our court has spoken on the issue of religion stating:

> [B]oth parties are entitled to participate in deciding questions regarding the religious instruction of the children. We will not prescribe what type or form of religious instruction should be provided for the children, nor which parent will be responsible for the religious instruction of the children.

*In re Marriage of Craig*, 462 N.W.2d 692, 694–95 (Iowa App.1990).

Marty also complains about Scott's drug use. However, Scott testified he uses marijuana sparingly and never uses it in front of the children. Both parents care greatly for Jesse. However, Marty has not shown a substantial change in circumstances. We encourage the couple to continue to work on their communication skills keeping the best interest of Jesse in mind. We affirm the trial court on the issue of custody.

■ Marty next argues the trial court erred in ordering her to pay child support and assist in the transportation costs for Jesse. Marty was not required to pay child support at the time of the original decree and now has been ordered to pay support after quitting her job in order to stay at home with her children. Marty has chosen to stay at home because she feels it is in the best interest of her child, not because she is attempting to avoid paying child support.

■ In setting an award of child support, it is appropriate to consider the earning capacity of the parents. However, before using earning capacity rather than actual earnings, a court must make a finding that, if actual earnings were used, substantial injustice would result or adjustments would be necessary to provide for the needs of the child and to do justice between the parties. Here we have made no such finding. *See In re Marriage of Bonnette*, 492 N.W.2d 717, 722 (Iowa App.1992) (citations omitted). We respect Marty's decision to remain at home. We will not rely upon her "earning capacity" for application of the guidelines.

There has not been a substantial change in Marty's income which would now warrant an increase in child support. We reverse the court's order of child support and affirm the order requiring Marty assist in transportation costs.

**AFFIRMED IN PART AND REVERSED IN PART.**

All Judges concur except SACKETT, J., who concurs specially.

SACKETT, Judge (concurring specially).

I concur specially.

Appellant Marty is the mother of Jesse, from her marriage to appellee Scott, and the mother of Bruck, the son of her current husband.

Jesse is in Scott's custody and the trial court ordered Marty to pay minimal child support for Jesse to Scott in the amount of $144.75 per month.

Marty contends she owes no financial support to Jesse because she and her current husband decided she should stay at home and care for Bruck, her second son. The majority has relieved her of the ordered financial contribution, finding that because they respect her decision to remain at home they will not consider her earning capacity in applying the guidelines.

Like the majority, I too respect Marty's decision to stay at home to care for her second child. However, she is providing neither custodial care nor financial support to her first child.

I agree Marty should not be ordered to pay support for Jesse because she was not ordered to pay support originally, and Scott did not meet his burden of showing change of circumstances.

I have concern that the majority opinion will be interpreted as allowing a noncustodial parent (father or mother) to be relieved of financial support to a child of a first marriage if the parent elected to remain at home to care for a child of the second marriage.