STATE of Iowa, IOWA DEPARTMENT OF SOCIAL SERVICES, ex rel., Janet WELTER, Appellee,

v.

**Paul Arthur KITNER, Appellant.**

No. 92–1117.

Court of Appeals of Iowa.

Dec. 29, 1993.

Denny R. Wilson of Craig, Wilson & Flickinger, Independence, for appellant.

Sharon McMulin of Johnston, Larson, Potterfield, Zimmerman & Nathanson, Cedar Rapids, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

Paul Kitner and Janet Welter had a significant relationship from approximately 1976 to 1982. The parties never married. A son, Joshua Kitner, was born to them on February 16, 1977. Janet retained physical custody of the child and Paul paid child support. The district court modified child support on numerous occasions.

On February 17, 1991, Joshua began living with Paul according to an agreement reached by the parties. Janet needed to move from Iowa City because she had a job in Davenport. The parties agreed it would be best for Joshua to live with his father. Joshua also wanted to live with his father. On May 23, 1991, Paul filed an application for modification of child custody. Paul also requested that an order be entered stopping his child support obligation effective from February 17 since Janet no longer had physical care of Joshua. Paul asked the district court to order Janet to pay child support. In addition, Paul sought the return of his gas tax refund which was held because of his failure to pay child support after February 17.

On or about December 1, 1991, the district court ordered Janet to pay Paul temporary child support in the amount of $68 per week.

On May 29, 1992, the district court filed its decision modifying child custody placing Joshua in his father's physical custody. The district court found that Paul's child support obligation remained in effect from February 1991 through November 1991. The district court found that Paul owed Janet $2500 from the months of February through November. The district court gave Paul a credit for his garnished tax refund. The district court determined that Janet owed Paul $1632 as a result of the temporary support obligation she had not paid. The district court offset the amounts owed against each other and ordered Paul to pay Janet the $281 difference.

The district court found Janet's net monthly income to be approximately $1254. Paul is engaged in a farm operation with his brother and the partnership is worth approximately $425,560. The district court concluded that a variation from the child support guidelines should be made. The district court ordered Janet to pay child support in the amount of $35 per week beginning May 18, 1992. The district court ordered each party to pay half of the costs.

Paul has appealed. He also asks for his attorney fees in the amount of $600. Janet responds that it is she, not Paul, who is entitled to attorney fees.

 Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

I. Appellant first asserts the district court erred in not following the supreme court's child support guidelines when calculating the amount of child support appellee should pay. The guidelines state in pertinent part:

In ordering child support, the court should determine the amount of support specified by the guidelines. There shall be a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded. That amount may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case.

. . . .

The court shall not vary from the amount of child support which would result from the application of the guidelines without a written finding that the guidelines would be unjust or inappropriate as determined under the following criteria:

(1) Substantial injustice would result to the payor, payee, or child;

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or payee under the special circumstances of the case;

Child Support Guidelines, 1990 Iowa Acts ch. 1224, § 45.

■ The district court did not make a finding that application of the guidelines would be inappropriate under any of the criteria listed in the guidelines. Nor did the court determine appellant's income so as to be able to apply the guidelines. Other than finding appellee "has obligations for indebtedness incurred for her educational expenses" and appellant's "partnership has a net worth of $425,560.00," the court made no findings that even suggest varying from the guidelines would be appropriate. The mere conclusion "[t]hat a variation from the amounts set forth in the guidelines adopted by the Iowa Supreme Court should be made" does not meet the requirements set forth in the guidelines for varying from their application.

■ After a careful examination of the record before us, we find application of the child support guidelines appropriate. The district court did not make a determination of appellant's monthly income. Determining his income from income tax returns is problematic because he is in a farming partnership with his brother and taxable income fluctuates widely from year to year. In the hearing on the application for modification, however, appellant admitted and appellee agreed that appellant's income falls in the "3000 & Over" category for purposes of determining child support. Taking appellant's own admission and the court's determination that appellee's net monthly income is $1254, we can apply the guidelines. The guidelines set the proper support amount at 22.5 percent of appellee's net monthly income, which equals $282.15 per month. We therefore modify the district court's order to reflect the amount determined by application of the guidelines.

■ **II.** Appellant next argues the district court erred in not making the modification in the child support he was paying retroactive to the date of the petition for modification. We agree. In 1990 the legislature amended Iowa Code section 598.21(8) by adding a new unnumbered paragraph which states:

Judgments for child support or child support awards entered pursuant to this chapter, chapter 234, 252A, 252C, 600B, or any other chapter of the Code which are subject to a modification proceeding *may be retroactively modified* only from the date of the notice of the pending petition for modification is served on the opposing party.

1990 Iowa Acts ch. 1224, § 43 (emphasis added). In interpreting and applying this amendment, the supreme court retroactively canceled a child support judgment. The court stated:

Both the broad retroactive provision in section 598.212(8) and the specific provisions in section 598.21(8)(k) were adopted in 1990. 1990 Iowa Acts ch. 1224, § 43. *These amendments enlarge the court's authority to modify a support decree and to make the modification retroactive. Before adoption of the amendments, the court had no authority to reduce or cancel support judgments retroactively.* In re Marriage of Shepherd, 429 N.W.2d 145, 146–47 (Iowa 1988)....

Thus, the Iowa legislature has expanded the court's authority to modify child support and has clearly authorized retroactive modification.

*State ex rel. Hunter, by Hastie v. Hunter,* 501 N.W.2d 533, 536 (Iowa 1993) (emphasis added); *see In re Marriage of Phares,* 500 N.W.2d 76, 78–79 (Iowa App.1993) (affirming a retroactive reduction in child support). These cases clearly signal a change in our previous law which allowed retroactive increases only, not retroactive decreases. *Shepherd,* 429 N.W.2d at 146–47.

We find, since this case involves a change in physical custody, it would be inequitable to require the custodial parent to continue paying child support to the non-custodial parent after the date of notice of filing the petition for modification. The record reveals appellee was personally served a copy of the petition and original notice on May 30, 1991.

Accordingly, we cancel appellant's child support obligation effective May 30, 1991. We modify the calculations of the district court to reflect this change. Appellant owes support at $250 per month for the months of February through May 1991 inclusive for a total of $1,000. He is entitled to a credit of $587 for the amount garnished and paid to appellee, leaving a balance due of $413. Offsetting this amount against the $1,632 appellee owes for temporary child support from December 1991 to May 1992 leaves a balance of $1,219 owed by appellee. Appellant shall have a judgment in that amount against appellee.

**III.** Appellant also argues the court should have ordered appellee's child support obligation be retroactive to the date of the petition for modification. We agree the district court has authority to order payments retroactive to the date of petition. *Shepherd,* 429 N.W.2d at 146–47 (citing prior cases supporting a retroactive increase in payments). Such retroactivity, however, is not mandatory. We believe, given the financial situation of the parties in this case, even though custody was changed, the court did not err in requiring payments only from the date of the order for temporary support.

**IV.** Appellant requests attorney fees on appeal. Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App. 1982). An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). Given the disparate financial situation of the parties, we determine appellant should pay half of appellee's attorney fees on appeal. Costs of this appeal are assessed to appellee.

**AFFIRMED AS MODIFIED.**