# IN THE SUPREME COURT OF IOWA

No. 08–1326

Filed April 30, 2010

**IN RE THE MARRIAGE OF PAMELA S. JOHNSON
AND DAVID L. JOHNSON**

**Upon the Petition of
PAMELA S. JOHNSON n/k/a PAMELA S. WOBBEKING,**

Appellee,

**And Concerning
DAVID L. JOHNSON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, John D. Lloyd (summary judgment) and Karen A. Romano (trial), Judges.

A spouse requests further review of a court of appeals decision affirming a district court's decision not to modify medical support payable to his former spouse. **DECISION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO DISTRICT COURT WITH DIRECTIONS.**

Robert A. Nading II of Nading Law Firm, Ankeny, for appellant.

Susan L. Ekstrom, Des Moines, for appellee.

**WIGGINS, Justice.**

In this appeal, we must decide if medical support, in the form of health insurance payments, constitutes modifiable spousal support or is part of the unmodifiable property settlement. Because we find medical support constitutes spousal support payments and is modifiable, we vacate the court of appeals' decision and reverse that part of the district court's judgment holding otherwise. Additionally, we affirm the district court's denial of attorney fees. Accordingly, we remand the case to the district court to enter a judgment consistent with this decision.

## I. Standard of Review.

Our review of a decision in a proceeding to modify the terms of a marriage dissolution decree is de novo. *In re Marriage of Barker*, 600 N.W.2d 321, 323 (Iowa 1999).

## II. Background Facts and Proceedings.

On our de novo review, we find the facts as follows. In 1989 Pamela and David Johnson were married in Las Vegas, Nevada. On January 30, 2004, the district court dissolved the parties' marriage in a document entitled "Joint Stipulation and Decree of Dissolution of Marriage." The dissolution decree provided:

> Health and dental insurance coverage. David is presently providing medical and dental coverage for Pamela, and David shall be required to pay to Pamela up to $300 per month for health insurance after entry of the Decree. If the cost to Pamela is less than $300, David shall only be required to pay the lessor cost of the insurance.

Both parties complied with the dissolution decree, and David consistently met his medical support obligations under the decree. After the dissolution, Pamela remained on David's employer-based COBRA health insurance policy, for which he paid through a payroll deduction.

Initially, the cost of keeping Pamela on David's plan was approximately $240 a month; however, this cost eventually increased to approximately $298 a month.

In December 2006 Pamela became engaged to Bill Wobbeking. During the engagement, Pamela put her home up for sale and it unexpectedly sold in one week. Thus, in June 2007 Pamela moved into Bill's house and began to cohabitate with him. At about the same time, Pamela also reduced her work hours to approximately twenty hours a week.

Upon learning of Pamela's cohabitation with Bill, David filed an application to modify the dissolution decree on October 17, 2007, alleging that there had been a substantial and material change in circumstances, which warranted a modification of the medical support provision of the decree.

On January 8, 2008, Pamela married Bill. Prior to being married, the couple entered into a prenuptial agreement. After the marriage, Pamela notified David that he could remove her from his health insurance policy because, effective February 1, 2008, she would begin to receive health and dental insurance through her current husband, Bill. David removed Pamela from his health insurance policy, and from that point on, David simply reimbursed Pamela for her medical expenses by sending her a monthly check for approximately $300. At trial, Pamela claimed she reimbursed her current husband for the medical coverage he provided her by writing him monthly checks and/or depositing the $300 checks she received from David into a joint bank account.

David filed a motion for summary judgment alleging, as a matter of law, the court should terminate the payments due to Pamela's

remarriage, improved financial status, and lack of need for the payments. The district court overruled David's motion for summary judgment.

The case proceeded to trial on the issue of whether the medical support payments constituted an unmodifiable property division or modifiable spousal support. The district court found the decree's language was clear, and the medical support was separate and distinct from spousal support. Thus, the court concluded the medical support payments were "more akin to part of the property settlement" and treated them in that fashion. Accordingly, the court held the payments were unmodifiable and ordered David to continue to pay Pamela $300 a month for her medical expenses. The court filed its final ruling with the clerk of court on August 1, 2008.

David filed a notice of appeal from the district court's rulings. Pamela filed a notice of cross-appeal due to the district court's failure to award her attorney fees and costs. We transferred the case to the court of appeals. The court of appeals affirmed the decision of the district court and held that "the health and dental insurance coverage provision was in the nature of a property division, which is not subject to modification." The court of appeals also affirmed the district court's failure to award Pamela her attorney fees. David then filed an application for further review, which we granted.

**III. Issues.**

In this appeal, we must decide whether the medical support payments are modifiable and whether the court was correct in not awarding Pamela attorney fees.

**IV. Analysis.**

**A. Summary Judgment Claim.** David argues the court erred in failing to grant his motion for summary judgment. We have said on

numerous occasions that the district court's denial of a motion for summary judgment is not appealable if the case proceeded to a trial on the merits. *Lindsay v. Cottingham & Butler Ins. Servs., Inc.*, 763 N.W.2d 568, 572 (Iowa 2009); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004); *Klooster v. N. Iowa State Bank*, 404 N.W.2d 564, 567 (Iowa 1987). The previous denial of a motion for summary judgment merges with the subsequent trial on the merits when the trier of fact has fully reviewed the exhibits and listened to the testimony of the witnesses. *Kiesau*, 686 N.W.2d at 174. Thus, on an appeal from a final judgment following a trial, the trial court's final judgment supersedes a prior order denying a motion for summary judgment. *Klooster*, 404 N.W.2d at 567. Consequently, we decline to consider David's assignments of error relating to the summary judgment stage of this litigation and instead consider only the assignments of error that relate to the district court's final ruling on the application to modify.

**B. Whether the Medical Support Payments Were a Property Settlement or Spousal Support.** The court entered its dissolution decree in 2004; therefore, the 2003 Iowa Code controls the outcome of this issue.[1] At the time of the decree, the legislature authorized property settlements and spousal support awards in section 598.21 of the Code. Iowa Code § 598.21(1), (3) (2003). Property settlements are unmodifiable. *Id.* § 598.21(11). Spousal support awards are modifiable upon a showing of a substantial change of circumstances. *Id.* § 598.21(8). Thus, if the medical support payments are part of a property settlement, the district court was correct in holding it did not have the authority to modify those payments. On the other hand, if the

---

[1]All references to the Iowa Code in this section of our opinion will be to the 2003 Code.

medical support payments are spousal support, the district court had the authority to modify those payments.

Iowa Code section 598.21(1) authorizes the court to divide the parties' property in a dissolution action. *Id.* § 598.21(1). The legislature did not define the term "property" in chapter 598. When the legislature fails to define a term and its meaning is not established in the law, we give the term its ordinary and common meaning by considering the context in which the term was used. *City of Des Moines v. Employment Appeal Bd.*, 722 N.W.2d 183, 196 (Iowa 2006). The dictionary defines "property" as:

> **2 a :** something that is or may be owned or possessed . . .
> **b :** the exclusive right to possess, enjoy, and dispose of a thing **:** a valuable right or interest primarily a source or element of wealth . . . **c :** something to which a person has a legal title.

*Webster's Third New Int'l Dictionary* 1818 (unabr. ed. 2002). The purpose of a property settlement in a dissolution action is to award each party a just and equitable share of the property accumulated during their marriage. *In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981).

Iowa Code section 598.21(3) authorizes the court in a dissolution action to award support payments to either party. Iowa Code § 598.21(3). The legislature has defined "support" or "support payments" in chapter 598. *Id.* § 598.1(9). The Code provides:

> "*Support*" or "*support payments*" means an amount which the court may require either of the parties to pay under a temporary order or a final judgment or decree, and may include alimony, child support, maintenance, and any other term used to describe these obligations. For orders entered on or after July 1, 1990, unless the court specifically orders otherwise, medical support is not included in the monetary amount of child support.

*Id.*

From this statutory scheme, it is clear the legislature intended an award requiring a spouse to pay a monthly payment to the other spouse for health insurance to be spousal support rather than part of a property settlement. The purpose of the medical support payments David made to Pamela was to preserve part of the health insurance David maintained for Pamela during the marriage. Pamela was entitled to these payments for future health care expenses, not as a payment for the division of an asset she and David owned, possessed, or accumulated during their marriage.

The legislature's definition of "support" or "support payment" includes "maintenance, and any other term used to describe these obligations." *Id.* Moreover, in defining "support" or "support payment," the legislature makes specific reference to "medical support," indicating it is a form of support. *Id.* This reference indicates a legislative intent to include medical support as a form of support.

Finally, Pamela argues the district court awarded her medical support because of a disparate property settlement. Thus, she claims the medical support is really part of a property settlement and is unmodifiable. We disagree.

Pamela's argument fails to consider the statutory scheme the legislature enacted concerning an award of spousal support. One factor a court takes into consideration when awarding spousal support is the property settlement made by the court under section 598.21(1). *Id.* § 598.21(3)(*c*). The court's consideration of a disparate property settlement when awarding additional support to a spouse does not change the fact that the additional support awarded is a spousal support award. If we were to hold otherwise, the property settlement no longer would merely be a circumstance to be used by the court in determining

whether to award spousal support and/or determine the amount of a spousal support award. Rather, the property settlement would be determinative as to whether a spousal support award is in fact a property settlement. Just because a court applies the law as envisioned under section 598.21(3)(*c*) and makes a spousal support award based upon a disparate property settlement, the court does not transform the spousal support award into a property settlement. Any other interpretation of section 598.21(3)(*c*) is contrary to the statutory scheme and the intent of the legislature.

Therefore, we conclude as a matter of law that a provision in a dissolution decree requiring one spouse to provide medical support in the form of health insurance payments to the other spouse is modifiable spousal support under Iowa Code section 598.21(3).

**C.    Whether the District Court Erred When It Failed to Terminate the Medical Support on Pamela's Remarriage.** David filed his modification action in 2007; therefore, the 2007 Iowa Code controls the outcome of this issue.[2] At the time David filed his action, the legislature authorized the modification of support awards when there has been a substantial change in circumstances. *Id.* § 598.21C(1) (2007). When determining whether there has been a substantial change in circumstances justifying a modification, a court must consider, among other factors, changes in the resources of a party, changes in the residence of a party, remarriage of a party, and the possible support of a party by another person. *Id.* § 598.21C(1)(*a*), (*f*), (*g*), (*h*). The burden is on the person seeking the modification to prove a substantial change in

---

[2]All references to the Iowa Code in the remaining sections of our opinion will be to the 2007 Code.

circumstances by a preponderance of the evidence. *In re Marriage of Wessels*, 542 N.W.2d 486, 489–90 (Iowa 1995).

David claims Pamela's remarriage was a substantial change in circumstances. In the area of alimony, we have held that a subsequent remarriage does not automatically end an alimony obligation; instead, it shifts the burden to the recipient spouse to show extraordinary circumstances justifying the continuation of the alimony payments. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). The rationale for this rule is that it is illogical and unreasonable for a person to receive support by way of alimony from a former spouse and an equivalent obligation from the present spouse at the same time, unless extraordinary circumstances exist. *Id.*

The legislature requires a spouse to be liable for the "reasonable and necessary expenses of the family." Iowa Code § 597.14. We have interpreted this section to mean that a spouse is responsible for the payment of the other spouse's medical and hospital expenses incurred during the marriage. *St. Luke's Med. Ctr. v. Rosengartner*, 231 N.W.2d 601, 602 (Iowa 1975). Thus, as with alimony, upon remarriage the prior spouse and the current spouse are responsible for an equivalent medical support obligation. Just as with alimony, the requirement of two persons being responsible for the same obligation is illogical and unreasonable. Accordingly, the same rationale supporting the termination of alimony upon the recipient spouse's remarriage is equally applicable to the termination of medical support. Therefore, a subsequent remarriage does not automatically terminate a medical support obligation; instead, it shifts the burden to the recipient spouse to show extraordinary circumstances justifying its continuation.

Recognized extraordinary circumstances include: (1) the annulment or invalidity of the second marriage, (2) the inability of the subsequent spouse to furnish support, (3) the death of the subsequent spouse, or (4) the dissolution of the subsequent marriage. *Shima*, 360 N.W.2d at 829. These circumstances conform to the underlying rationale that it is illogical and unreasonable for a person to receive equivalent obligations of support from two persons at the same time. *In re Marriage of Wendell*, 581 N.W.2d 197, 200 (Iowa Ct. App. 1998).

Upon her remarriage, Pamela had the burden to show extraordinary circumstances warranted her continued receipt of medical support payments from David. Pamela has failed to prove any of the extraordinary circumstances recognized by our courts. Pamela's marriage to Bill has not been annulled or found invalid. Bill has not died and neither party has petitioned for a dissolution of marriage. Moreover, Bill is clearly able, and in fact, is currently furnishing medical support to Pamela. At the modification trial, Bill admitted that his current net worth is approximately $1.5 million. In addition, since February 2008 Pamela has received health and dental insurance through Bill's health insurance policy. Thus, Pamela's failure to show extraordinary circumstances after her remarriage warrants the termination of David's obligation to provide medical support payments to Pamela.

**D. Effective Termination Date of the Medical Support Payments.** David argues the court should retroactively terminate the medical support payments on one of the following dates: (1) the date Pamela and Bill began to cohabitate, (2) the date Pamela remarried, (3) the date Pamela began to receive health benefits at allegedly no cost from Bill, or (4) at the very least, the date the trial court denied David's motion for summary judgment.

The Code allows a child support obligation to be retroactively modified only from three months after the date the opposing party received notice of the modification petition. Iowa Code § 598.21C(4). There is no corresponding provision in the Code dealing with the retroactive modification of spousal support awards. Our courts have no authority to retroactively decrease a spousal support award to the date of the filing of the application for modification unless and until the legislature gives the courts the authority to do so. *In re Marriage of Shepherd*, 429 N.W.2d 145, 146 (Iowa 1988); *In re Marriage of Harvey*, 393 N.W.2d 312, 314 (Iowa 1986); *Delbridge v. Sears*, 179 Iowa 526, 536–37, 160 N.W. 218, 222 (1916). This rule is based on the premise that each installment payment of a spousal support award in the original decree becomes a binding final judgment when it comes due and cannot be decreased until a subsequent judgment is entered decreasing the original award. *See Shepherd*, 429 N.W.2d at 146; *Walters v. Walters*, 231 Iowa 1267, 1270, 3 N.W.2d 595, 596 (1942). This rule is true even though a change of circumstances may have occurred prior to the entry of the modification decree. *Shepherd*, 429 N.W.2d at 146; *Walters*, 231 Iowa at 1270, 3 N.W.2d at 596. Consequently, we have refused to retroactively terminate spousal support awards upon a party's remarriage; instead, we have consistently terminated spousal support payments prospectively, from the date the trial court issued its modification ruling. *See, e.g., In re Marriage of Harvey*, 466 N.W.2d 916, 918–19 (Iowa 1991) (holding alimony should terminate as of the date of the modification decree); *Harvey*, 393 N.W.2d at 314 (recognizing a trial court cannot terminate alimony payments which accrue prior to the date the modification order was entered); *In re Marriage of Bonnette*, 431 N.W.2d 1, 5 (Iowa Ct. App. 1988) (holding the trial court acted properly

when it terminated alimony payments prospectively from the date of the filing of its opinion). Therefore, we can only terminate the medical support award from the date the district court entered its decree.

A district court's modification decree is effective when the court files it with the clerk of court. Iowa R. Civ. P. 1.453. The district court filed its final ruling with the clerk of court on August 1, 2008. Our decision reversing the district court "is also effective as of the date of the trial court's entry of the modification decree." *In re Marriage of Schradle*, 462 N.W.2d 705, 708 (Iowa Ct. App. 1990). Therefore, our decision reversing the district court is effective as of August 1, 2008.

If David has paid any medical support after August 1, 2008, we order Pamela to repay said support to David. Pamela shall also pay interest as provided by law on any repayment because each installment payment of a spousal support award becomes a binding final judgment when it becomes due. *See Schwennen v. Abell*, 471 N.W.2d 880, 884 (Iowa 1991) (stating, " 'If payment has been made to the judgment creditor or to his agent, or to an officer who has paid the judgment creditor, upon reversal of the judgment the payor is entitled to receive from the creditor the amount thus paid *with interest*.' " (quoting Restatement of Restitution § 74 cmt. *d* (1937))).

**E. Attorney Fees.** Pamela cross-appealed claiming the district court should have awarded her attorney fees. This opinion reverses the district court's judgment holding the medical support payments due Pamela are unmodifiable. Therefore, Pamela is not a prevailing party in this litigation. The Code only allows our courts to award attorney fees to the prevailing party in a proceeding seeking modification of a decree. Iowa Code § 598.36. Accordingly, we affirm the district court's decision not to award Pamela attorney fees.

**V. Disposition.**

We vacate the court of appeals' decision and reverse that part of the district court's judgment holding medical support was part of a property settlement and unmodifiable. We affirm the district court's ruling not to award Pamela attorney fees. Accordingly, we remand this case to the district court to enter a judgment terminating David's medical support obligation effective August 1, 2008, and order Pamela to repay any medical support paid by David after August 1, 2008, with interest as provided by law.

**DECISION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO DISTRICT COURT WITH DIRECTIONS.**